# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO CANEDO, et al.,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>PACIFIC BELL TELEPHONE CO., et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 17cv1879-LAB (KSC)<br><br>**ORDER DENYING MOTION TO REMAND** |

Defendants removed this case from the Superior Court of California for the County of San Diego, relying on federal question jurisdiction. Although all the claims in the complaint are identified as arising under state law, Defendants argue that they are completely preempted by federal law because they all involve interpretation of a collective bargaining agreement. The parties are not diverse, and no other basis for this Court's exercise of jurisdiction is apparent. Plaintiffs then moved to remand.

Defendants argue Plaintiffs' claims arise under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("Section 301" or "§ 301"). They cite *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) and other cases as

holding that Section 301 preempts all state-law causes of action that require the court to interpret or apply the provisions of a collective bargaining agreement.

Plaintiffs were all employees of Pacific Bell and/or AT&T. Defendants offer evidence that, during the time of Plaintiffs' employment there, they were covered by one of two collective bargaining agreements that, with regard to the claims here, were identical (the "CBA"). (Decl. of John Irelan in Support of Opp'n to Mot. to Dismiss, ¶¶ 3–5.) The first of these was effective April 8, 2012 through April 9, 2016. The second and current CBA came into effect April 10, 2016. Defendants also offer excerpts of the 2012 CBA as Exhibit A to their Opposition, and have offered to submit the entire document if requested.

Plaintiffs allege that they all began working for Pacific Bell and/or AT&T at various times from 1997 through 2010 as Splicing Technicians. At the time, they were all designated "Term" employees. Around March of 2015, they allege Defendant Betsy Farrell, a Vice President for AT&T, promised that she would formally designate Plaintiffs as "Regular" status employees and that they would not be terminated except "for Cause." Relying on this promise, Plaintiffs allege, they continued to work for Defendants. The "Regular" Splicing Technician positions that came open in San Diego at that time, however, were filled by other workers by November, 2015. (Irelan Decl., ¶ 7.) Defendants believe the vacancies were filled as required by the CBA. (*Id.*) Both "Term" and "Regular" employees are job classifications under sections 4.03.B and 7.10.B of the CBA.

Then around June of 2016, Plaintiffs allege that a rumor of layoffs began circulating. Because they had not yet been designated as "Regular" employees and feared being laid off, Plaintiffs allege they complained to Defendants that Farrell's promise had not been honored. The complaint does not say when they complained. Shortly after that, in late October, they were fired. The complaint implies that the firing was related to the complaints.

/ / /

**Jurisdiction**

"The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute." *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (citation omitted). Here, that means Defendants must demonstrate that the Court has jurisdiction. *See Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). Until they do, jurisdiction is presumed to be lacking. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Under 28 U.S.C. § 1447(c), the Court must remand the case to state court if at any time before final judgment it appears the Court lacks subject matter jurisdiction. There is a "strong presumption" against removal jurisdiction, and jurisdiction must be rejected if any doubt exists as to the propriety of removal. *Gaus*, 980 F.2d at 566.

Even if Plaintiffs had not moved for remand, the Court would be under an independent obligation to examine whether removal jurisdiction exists. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004) (further citations omitted). Subject matter jurisdiction cannot be waived; even if Plaintiffs fail to point out jurisdictional flaws, the Court is obligated to raise them *sua sponte*. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). This obligation does not work the other way, however. The Court cannot properly engage in speculation in favor of jurisdiction, or deny remand for reasons Defendants never advanced. *See Gaus*, 980 F.2d at 566; *Molina v. Pacer Cartage, Inc.*, 47 F. Supp. 3d 1061, 1062–63 (S.D. Cal., 2014).

Under the well-pleaded complaint rule, federal jurisdiction typically exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005) (citations omitted). "[A] case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the

federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). *See also Young v. Anthony's Fish Grottos, Inc.*, 830 F.3d 993, 997 (9th Cir. 1987) ("A state action cannot be removed to federal court based on a federal defense, even that of preemption . . . .") "This rule makes a plaintiff the 'master of his complaint': He may generally avoid federal jurisdiction by pleading solely state-law claims." *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005) (citation omitted).

A corollary to the well-pleaded complaint rule, however, is the "complete preemption doctrine," which may "convert[ ] an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar*, 482 U.S. at 393 (citation omitted). The Supreme Court has explained that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles . . . must be employed to resolve the dispute." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988) (footnotes and citations omitted).

But "not every dispute tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Id.* at 413 n.12 (citation and alterations omitted). The fact that the Court *may* have to examine the collective bargaining agreement to resolve the preemption issue is not enough. *Cramer*, 255 F.3d 683, 693. The only applications of state law that are preempted are those that necessarily require the interpretation of a collective bargaining agreement. *Id.* "The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Id.* at 691.

"[A]s long as the state-law claim can be resolved without interpreting the [collective bargaining] agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Milne Employees Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1410 (9th Cir. 1992). A provision in a collective bargaining agreement

4

will not trigger preemption when it is only potentially relevant to the resolution of state law claims." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 990–91 (9th Cir.2007) (citing *Humble v. Boeing Co.*, 305 F.3d 1004, 1010 (9th Cir.2002) (other citation omitted)). The possibility that the Court might be required to or might choose to interpret the collective bargaining agreement to resolve the claim does not counsel against remand. Nor would it interfere with adjudication of any claims. *See United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368 (1990) (holding that state courts have concurrent jurisdiction over controversies involving collective bargaining agreements, and apply federal law when deciding those claims).

"[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must be either treated as a § 301 claim, or dismissed as preempted by federal labor-contract law." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (internal citation omitted)). Importantly, under the well-pleaded complaint rule, the claim itself, not any defenses to that claim, must arise under the CBA. Federal defenses, including the defense of preemption, are not enough. *Caterpillar*, 482 U.S. at 392–93. "Preempted" is not synonymous with "removable" and the fact that a claim is preempted does not necessarily mean it is removable. "[T]o remove a state law claim to federal court under the complete preemption doctrine, federal law must both completely preempt the state law claim and supplant it with a federal claim." *Young*, 830 F.3d at 997. In other words, if the claim is to be treated as a § 301 claim, it is removable. But if it is merely subject to dismissal because of the defense of federal preemption, it is not.

A number of older Ninth Circuit decisions take an expansive and sometimes apparently inconsistent view of § 301 preemption and resulting federal question jurisdiction. But the Ninth Circuit has narrowed some of those holdings in light of intervening Supreme Court precedent. *See Cramer v. Consolidated Freightways,*

*Inc.*, 255 F.3d 683, 69293 (9th Cir. 2001), as amended (Aug. 27, 2001) (en banc). *See Green v. Bimbo Bakeries USA*, 77 F. Supp. 3d 980, 986–87 (N.D. Cal. 2015) (reasoning that *Cramer* and *Lingle* narrowed the scope of certain older Ninth Circuit decisions).

Section 301 "is not designed to trump substantive and mandatory state law regulation of the employee-employer relationship. . . ." *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1076 (9th Cir. 2005) (citation omitted). Thus, a claim brought on the basis of a mandatory state law is not preempted, even if an identical claim could be brought under Section 301. *Id.* (citing *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). Section 301 "cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Id.*

**Discussion of Claims**

Plaintiffs bring seven claims: 1) breach of contract; 2) misrepresentation (fraud); 3) restitution for unfair business practices (Cal. Bus. & Prof. Code § 17200); 4) wrongful termination in violation of public policy; 5) failure to reimburse business expenses (Cal. Lab. Code § 2802); 6) failure to produce personnel records (Cal. Lab. Code § 226(b)); and 7) promissory estoppel.

**Claims 5 and 6**

Plaintiffs argue that claims based on the California Labor Code are not preempted, and Defendants have not argued otherwise. Instead, they argue that the Court can exercise supplemental jurisdiction over them.

**Claim 3**

Defendants gave only cursory attention to the third claim for unfair business practices, arguing that because it is premised on the collective bargaining agreement it is federal in nature. In fact, this claim is based on a general pattern of allegedly unfair business practices beginning at an unknown date and spanning

///

///

four years. The complaint does not say what those were,[1] but the four-year time frame, the generalized description, and the reference to "the practices alleged herein" (Compl., ¶ 47) suggest they include non-contractual unfair practices. They also include the state labor code violations. Because this claim could be established without reference to any federal law,[2] it is not a federal claim for jurisdictional purposes. *See Rains v. Criterion Systems, Inc.*, 80 F.3d 339, 346 (9th Cir. 1996).

**Claim 4**

Defendants contend that the fourth claim for wrongful discharge in violation of public policy is governed by the CBA, but they misread it as a claim for termination in violation of a contract. (Opp'n at 4:17–23, 7:5–8.) In fact, the complaint pleads it as being premised on the alleged pattern of violations of Cal. Bus. & Prof. Code. § 17200. To the extent the § 17200 claim is not preempted, this claim derived from it is also not preempted. *See Romero v. San Pedro Forklift, Inc.*, 266 Fed. Appx. 552, 555 (9th Cir. 2008) (holding that claim that derived from non-preempted state claim was also not preempted).

The alleged violations also include firing them for complaining about alleged breaches of contractual obligations. (Compl., ¶¶ 29–30.) The fact that Plaintiffs were complaining about contractual breaches does not mean that their claims arise from or are governed by the CBA. Their claim does not depend on the validity of their complaints, but on whether they were wrongfully discharged for making them.

---

[1] If the complaint had been filed initially in federal court, federal pleading standards would have required more facts to be alleged. But because this action was filed in state court, it is unsurprising that Plaintiffs included less detail.

[2] It could, of course, be resolved with reference to federal law. But first resolving the claim and then deciding whether jurisdiction is present is both improper and pointless. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93–94 (1998). In any event, a state court is capable of resolving such a claim. *See United Steelworkers*, 495 U.S. at 368.

Section 301 preempts claims for wrongful termination in violation of public policy if they are based on a collective bargaining agreement rather than on a state public policy. *Young*, 830 F.3d at 1001–02.

Under California law, a wrongful discharge in violation of public policy can be based on, among other things, termination because of an employee's exercise of a constitutional right or privilege. *Green v. Ralee Eng'g Co.*, 19 Cal.4th 66, 76 (1998). At least arguably, Plaintiffs' complaints amount to exercise of their right under California's constitution to liberty of speech, *see* Cal. Const. Art. 1, § 2(a), and they were terminated (in part) for exercising that right. Defendants have offered no explanation or argument about whether this claim is based on a genuine state policy, and have therefore not met their burden of establishing federal jurisdiction as to this claim. The CBA also appears to have a "just cause" provision, but Defendants have not attempted to show that the wrongful discharge claim arises under this clause. *See Stallcop v. Kaiser Foundation Hosps.*, 820 F.2d 1044, 1049 (9th Cir. 1987).

**Claims 1, 2, and 7**

The only other claims that are arguably federal in nature are contract-based. Plaintiffs' breach of contract claim is based on a theory that Farrell's promises amounted to an enforceable contract. The promissory estoppel claim is very close to the breach of contract claim, except that it involves Plaintiffs' reasonable and foreseeable reliance on Farrell's promises instead of a valid contract. Their fraud claim, however, is based on allegations that Farrell's promise was false when made, and that she knew it. In other words, they allege she made this promise with the intent never to perform it.

Defendants cite the CBA's terms, which govern how vacancies are to be filled. Defendants interpret the CBA as providing that changing the classification of a position from "Term" to "Regular" amounts to the creation of a new position. (Irelan Decl., ¶ 6.) Although Defendants' briefing says Plaintiffs were "fifth in line"

for open positions, this refers to their priority rating under the CBA. The briefing says nothing about the number of Splicing Technician positions, either "Term" or "Regular," that existed at the time or became vacant in the San Diego area. Nor does it say anything about the number of employees other than Plaintiffs who were eligible to fill those positions.

The Court's analysis of these three claims begins with an examination of the elements. *See Lingle*, 486 U.S. at 407.

**Claim 2: Fraud**

Although fraud may be related to a contract, it is not a contract claim and does not involve enforcing a contract. The elements of the tort of fraud are 1) a misrepresentation 2) with knowledge of its falsity 3) with the intent to induce reliance, 4) the plaintiff's justifiable reliance, and 5) resulting damage. *Conroy v. Regents of Univ. of Calif.*, 45 Cal.4th 1224, 1255 (2009). Most of these do not involve the CBA. Farrell's promise might have been false if she knew the CBA prevented Plaintiffs from being designated "Regular" employees, or at least if it prevented her from doing this. And Plaintiffs' reliance might have been unjustified if they knew or should have known this. *See Niehaus v. Greyhound Lines, Inc.*, 173 F.3d 1207, 1212 (9th Cir. 1999) (justifiable reliance analysis involved a question of whether plaintiff knew the collective bargaining agreement's terms, not what the terms meant); *Beals v. Kiewit Pac. Co. Inc.*, 114 F.3d 892, 894 (9th Cir.1997) (same). But the situation here is different. Defendants agree Plaintiffs could have been designated "Regular" employees, but were not because the CBA led to other employees with higher priority being given the positions. The facts of each case are important. *See Milne*, 960 F.2d at 1410 (citing *Allis-Chalmers*, 471 U.S. at 220) (explaining that preemption analysis of fraud claim was depending on unique facts in the case).

Whether Farrell believed she could keep the promise and intended to do so, and whether Plaintiffs justifiably relied on it *might* depend on the CBA or the

interpretation of its terms, but not necessarily. *See Niehaus*, 173 F.3d at 1212 (justifiable reliance analysis did not depend on interpretation of collective bargaining agreement). Defendants controlled the number of vacancies, and likely knew how many Splicing Technicians they were likely to need. And in any event, they presumably had the power to create new positions if they chose. The CBA does not govern the number of positions.

A statement to the effect that Plaintiffs would be made "Regular" employees could have been based on a representation about the number of upcoming vacancies Defendants expected to have, or even the number they might have been willing to create. "I promise to designate you as 'Regular' employees" could mean "I promise there will be enough 'Regular' openings for each of you, and that you will be given priority to ensure you get them." But it could also mean "We are going to need a lot of new Splicing Technicians, and will have so many new 'Regular' openings that, in light of the number of people who are eligible for them, you are sure to get one." It could also mean "I promise that we can and will create as many 'Regular' positions as necessary to make sure you each get one." *See Milne*, 960 F.2d at 1410 (holding that misrepresentations about job security in light of secret plans to shut down the company were not anticipated by collective bargaining agreement and could support a non-preempted fraud claim).

In addition, neither party has said how many openings there actually were. If Farrell promised "Regular" positions to each of the six Plaintiffs knowing there would be fewer than six "Regular" positions offered, the promise would have been knowingly false regardless of what the CBA said. In other words, the alleged falsehood of the promise, and whether Plaintiffs were justified in relying on it might or might not have been based on the CBA. The Court cannot say that resolution of the fraud claim necessarily requires interpretation or application of the CBA.

Defendants also point out that the alleged promise includes a guarantee that Plaintiffs would not be fired except for just cause, and that the CBA defines "just

cause." But they also agree that the CBA provides that "Regular" employees have the benefit of this guarantee. The Complaint treats the "just cause" promise as stemming from Plaintiffs' promised "Regular" status. (Compl., ¶ 29 ("This [rumor about layoffs] raised concerns for Plaintiffs because they were promised to be Regular employees, who may only be terminated 'for Cause.'").) The "just cause" promise could be subsumed within the larger promise to designate Plaintiffs "Regular" employees.

Defendants have not carried their burden of showing that resolution of this part of the fraud claim necessarily requires interpretation of the CBA.

**Claim 1: Promissory Estoppel**

Under California law, the elements of a promissory estoppel claim are 1) a promise 2) made with reasonable expectation that it would induce reliance or forbearance, 3) actual reliance or forbearance, and 4) enforcement of the promise being the only way to avoid injustice. *Kajima/Ray Wilson v. Los Angeles Cty. Metropolitan Transp. Auth.*, 23 Cal.4th 305, 310 (2000). None of these elements necessarily require interpretation of the CBA. The fourth element might involve interpretation of the CBA, if Plaintiffs knew about the CBA and their reliance was unjustified. But "a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim . . . ." *Cramer*, 255 F.3d at 691. Other than this, the promise's inconsistency with the CBA is not at issue here. It makes no difference whether Farrell had the power to designate Plaintiffs as "Regular" employees under the CBA. All that matters, for purposes of their claim, is whether she made the promise expecting that they would rely on it, and whether they did.

The promise itself, however, could be deemed to be part of the CBA. Defendants rely on a line of Ninth Circuit decisions holding that, where a plaintiff's position is "covered by the CBA, the CBA controls and any claims seeking to enforce the terms of [an agreement] are preempted." *Beals*, 114 F.3d at 894. *See Young*, 830 F.2d at 997–98 (alleged oral contract was controlled by collective

bargaining agreement); *Stallcop*, 820 F.2d at 1048 (alleged oral agreement concerning employee's reinstatement was only effective as part of collective bargaining agreement). Although *Caterpillar* held that an individual employment contract was not preempted, 482 U.S. at 396, the Ninth Circuit has distinguished it on the grounds that *Caterpillar* dealt with contracts entered into at a time the employee was not covered by a collective bargaining agreement. *Beals*, 114 F.3d at 894–95. Here, Plaintiffs were covered by the CBA at the time, so Defendants argue that the alleged promise Plaintiffs now seek to enforce is in effect an action to enforce the CBA.

Defendants' position is essentially that "side agreements" made by employees covered by a collective bargaining agreements give rise to removal jurisdiction. The law is not quite as simple as this, however. A more accurate statement of the law would be that "independent" or "side agreements" are either ineffective if they conflict with the collective bargaining agreement, or preempted if they do not. *See Chmiel v. Beverly Wilshire Hotel Co.*, 873 F.2d 1283, 1285–86 (9th Cir. 1989)*; Stallcop,* 820 F.2d at 1048; *Bale v. General Tel. Co.*, 795 F.2d 775, 779-80 (9th Cir. 1986). By itself, preemption does not necessarily result in removal jurisdiction. *Young*, 830 F.3d at 997 (9th Cir. 1987).

Some decisions deal with situations where the promise or agreement was actually deemed either a restatement of or part of the collective bargaining agreement. For example, in *Young*, the plaintiff who had been employed by the same business two years earlier returned to work, and claimed a manager had promised to employ her on the same terms as before, subject to discharge only for just cause (as provided by the collective bargaining agreement). 830 F.3d at 996. She was fired on her first day back at work, however, and sued. Under the collective bargaining agreement, employees with less than 30 days' seniority could be discharged at the employer's discretion, but employees with more seniority could be discharged only for just cause. *Id.* The Ninth Circuit determined that she

was really trying to enforce the collective bargaining agreement, albeit unsuccessfully. *Id.* at 999. *See also Stallcop*, 820 F.2d at 1047, 1048 (alleged oral agreement connected with written agreement negotiated by plaintiff, union, and employer could only be effective as part of the collective bargaining agreement); *Bale v. Gen'l Tel. Co. of Calif.*, 795 F.2d 775, 777 (9th Cir. 1986).

Still others take an alternative approach; the claims are either defensively preempted or else they are deemed disguised claims to enforce the collective bargaining agreement. *See Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1474 (9th Cir. 1984) (claim to enforce side agreement that could only have been effective if it were part of the collective bargaining agreement was deemed a claim to enforce the collective bargaining agreement).

There is some doubt about whether this line of cases is completely viable after *Cramer*. *See Green v. Bimbo Bakeries USA*, 77 F. Supp. 3d 980, 987 (N.D. Cal., 2015). But because it isn't clear they apply to promissory estoppel claims, the Court need not decide whether, and to what extent, *Cramer* may have limited their reach.

The "promise" element of this claim does not appear to turn on whether the promise would otherwise have been valid or possible to carry out. In this sense, the promissory estoppel claim appears to be more like a fraud claim than a contract claim. *See Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*, 211 Cal. App. 4th 230, 242–43 (Cal. App. 4 Dist. 2012) (outlining differences between promissory estoppel claim and contract claim); *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 231 (Cal. App. 2 Dist. 2011) (noting that elements of fraud are similar to promissory estoppel). Although the parties cited no binding precedent dealing specifically with promissory estoppel and the Court found none,[3] *Beals* addressed

---

[3] The only Ninth Circuit decision that appears to have addressed whether promissory estoppel claims are treated like contract claims for purposes of § 301

a similar negligent misrepresentation claim and found it not preempted. 114 F.2d at 895.

The Court finds Defendants' briefing does not show that the promise should be treated as part of the CBA. And, for reasons discussed in the fraud analysis above, it does not appear that the Court would have to interpret the CBA to decide whether the promise was or was not consistent with the CBA.

### Claim 7: Breach of Contract

In California, the elements of a breach of contract claim are 1) existence of a contract, 2) the plaintiff's performance (or excuse for nonperformance), 2) defendant's breach, and 4) resulting damages. *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011). The first element requires a valid contract. *Contemporary Investments, Inc. v. Safeco Title Ins. Co.*, 145 Cal. App. 3d 999, 1002 (Cal. App. 4 Dist. 1983). And a valid contract, in turn, requires 1) parties who have the legal capacity to contract, 2) consent, 3) a lawful object, and 4) consideration. *Stewart v. Preston Pipeline, Inc.* 134 Cal. App. 4th 1565, 1585 (Cal. App. 6 Dist. 2005); Cal. Civ. Code § 1550.

Defendants argue that the alleged contract involved an agreement to modify the CBA by exempting them from the job vacancy provision, and extending "just cause" protections to them even though they were "Term" employees. This misreads the complaint. All Plaintiffs have alleged is that Farrell promised she would do these things, not how she would do them. As discussed in the fraud analysis, *supra*, she could have kept her promise without exempting Plaintiffs from any of the CBA's requirements.

Defendants have also, however, pointed out that the CBA provides that Plaintiffs' union, the Communications Workers of America, has the sole authority

---

preemption analysis is an unpublished, pre-*Cramer* decision, *Lobel v. Pac. Bell Directory Co.*, 243 F.3d 1277 (9th Cir. 2000).

to enter into and execute agreements with Defendants regarding the terms and conditions of Plaintiffs' employment. (Opp'n at 1:18–20, 2:20–3:11; Irelan Decl., ¶ 3; Ex. A, §§ 1.01 and 1.04.)

Under the precedents discussed in the promissory estoppel analysis, a "side contract" between an employer and an employee covered by a collective bargaining agreement is either ineffective, or preempted, depending on whether it is consistent with the CBA's terms. A preempted claim might or might not be viable. *See Young*, 830 F.2d at 998 (noting that the federal claim that supplants a state claim might provide no remedy, or might be completely barred by a federal defense). Even after *Cramer*, these precedents appear to be good law, at least to the extent they hold that adjudication of claims depend on interpretation of collective bargaining agreements because those claims were in direct conflict with the agreements' terms. *See Green*, 77 F. Supp. 3d at 987. For example, where the collective bargaining agreement expressly providing that other agreements are invalid, a claim for breach of a "side agreement" necessarily requires interpretation of the collective bargaining agreement. *Id.* (citing *Walton v. UTV of San Francisco, Inc.*, 776 F. Supp. 1399, 1402 (N.D. Cal. 1991).

Although Plaintiffs' breach of contract claim is the only one that necessarily entails interpretation of the CBA, it is enough to confer jurisdiction.

**Conclusion and Order**

Defendants have met their burden of establishing that the Court can exercise jurisdiction over Plaintiffs' breach of contract claim, though not any of the other

///
///
///
///
///
///

claims. Nevertheless, the Court can exercise supplemental jurisdiction over the remaining claims.

The motion to remand is **DENIED**.

**IT IS SO ORDERED**.

Dated: September 17, 2018

_____
Hon. Larry Alan Burns
United States District Judge